[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APRIL 25, 2012
JOHN LEY
CLERK

No. 11-12787
Non-Argument Calendar
_____

D.C. Docket No. 1:09-cv-00642-WS-B


CERES ENVIRONMENTAL SERVICES, INC.,

                                        Plaintiff - Appellant,

versus

COLONEL MCCRARY TRUCKING, LLC,

                                        Defendant - Appellee.

_____

Appeal from the United States District Court
for the Southern District of Alabama
_____

(April 25, 2012)

Before EDMONDSON, MARCUS and BLACK, Circuit Judges.

PER CURIAM:

Plaintiff-Appellant Ceres Environmental Services ("Ceres") appeals from a

final order of the district court awarding Ceres attorney's fees, costs and litigation expenses arising out of a contract with its subcontractor Defendant-Appellee Colonel McCrary Trucking ("McCrary). On appeal, Ceres challenges the amount of attorneys' fees and litigation expenses the district court awarded to it because: (1) the plain language of the subcontract allows it to recover the full amount of legal fees and litigation expenses it incurred; (2) the district court failed to apply the proper procedures in setting the award; and (3) the full amount of investigative expenses was reasonably incurred and supported by the record. After thorough review, we affirm.

We review a district court's award of attorney's fees and costs for abuse of discretion, reviewing legal questions de novo and factual findings for clear error. Bivins v. Wrap It Up, Inc., 548 F.3d 1348, 1351 (11th Cir.2008) (per curiam). In determining the fees to which the payees are entitled, we look to the law of the state governing the contract at issue. Resolution Trust Corp. v. Hallmark Builders, Inc., 996 F.2d 1144, 1148 (11th Cir. 1993); Sure-Snap Corp. v. State of Vermont, 983 F.2d 1015, 1017 (11th Cir. 1993). In this case, the subcontract provides that it is governed by the laws of the state of Louisiana.

The relevant facts are these. McCrary was under contract to Ceres to provide debris removal services following Hurricane Katrina ("the subcontract"). On July 11, 2007, a McCrary driver, Joe Johnson was involved in a serious traffic accident in

Baldwin County, Alabama. The injured parties sued McCrary, Ceres and others in Alabama state court ("the Suit"). McCrary and Ceres eventually entered separate pro tanto settlements in the Suit, and McCrary removed a contractual indemnity cross-claim Ceres had filed to federal court. After reviewing the case on the briefs (as requested by the parties), the district court ruled that Ceres was entitled to contractual indemnity from McCrary for $2.9 million it had paid in settlement of the Suit. The district court then asked the parties to file briefs addressing Ceres's recovery of attorneys' fees and litigation costs.

> The subcontract provides in pertinent part:
>
> To the fullest extent permitted by law, [McCrary] agrees to save harmless, indemnify and defend [Ceres] … from any and all claims, losses, penalties, demands, judgments, and costs of suit, including legal fees and litigation expenses of any kind, … incurred by [Ceres] …, arising out of or in any way relating to the Contract Documents or performance of the Work.

Under this provision of the subcontract, Ceres sought an additional recovery of $1,659,939.13 for attorney's fees and litigation expenses, plus $12,500 for guardian ad litem fees. The district court ultimately awarded Ceres $1,118,293.16 in attorney's fees, costs and litigation expenses. This timely appeal follows.

First, we are unpersuaded by Ceres's argument that it should have received all fees and expenses it had requested based on the plain language of the subcontract. Ceres relies on the subcontract's clause providing indemnification "from any and all

3

claims, losses, penalties, demands, judgments, and costs of suit, including legal fees and litigation expenses of any kind… incurred by [Ceres] …, arising out of or in any way relating to" the subcontract. However, under Louisiana law, trial courts may determine the reasonableness of the fee awarded, no matter the language of the contract at issue. For example, in Fern Creek Owners' Ass'n, Inc. v. City of Mandeville, 21 So. 3d 369, 382-83 (La. App. 1st Cir. 2009), a contract allowed a prevailing party to receive "all attorney's fees and costs," but the trial court nonetheless refused to award the prevailing party the entire amount of fees it had requested. The reviewing court affirmed, holding that

> despite a provision fixing attorney fees in the parties' contract, courts may inquire as to the reasonableness of the attorney fees as part of their prevailing, inherent authority to regulate the practice of law. City of Baton Rouge v. Stauffer Chem. Co., 500 So. 2d 397, 401 (La. 1987)). In making an award of attorney fees, a court is not bound by the amount actually charged by the attorney. Jackson Square Towne Home Ass'n., Inc. v. Hannigan, [867 So. 2d 960, 965-66 (La. App. 2d Cir. 2004)]. A reasonable attorney fee is determined by the facts of an individual case. The trial court has the ultimate discretion to determine the amount of attorney fees that may be recovered, based on the court's own knowledge, the evidence, and the court's observation of the case and the record. Filson v. Windsor Court Hotel, [990 So.2d 63, 67 (La. App. 4th Cir. 2008)].

Id.

Similarly, in Trinity Universal Ins. Co. v. Good, 202 So. 2d 379, 380 (La. App. 1967), a contract provided for indemnification "from and against any and all liability,

loss, costs, damages, attorneys' fees and expenses of whatever kind or nature which the Company may sustain or incur by reason or in consequence of executing any such bond or bonds as surety or co-surety." The court found that "[s]ince the agreement merely stipulates the obligation for payment of attorney's fees without fixing the amount thereof, the amount should be reasonable, within the court's discretion." Id. at 386.

Thus, contrary to Ceres's argument, it is not entitled, under Louisiana law, to recover all fees and expenses; rather, it is only entitled to recover reasonable fees and expenses. In fact, Ceres conceded before the district court that the amount awarded must be reasonable. The district court therefore did not err in performing a reasonableness analysis before setting Ceres's fee award.

We also conclude that in performing this reasonableness analysis, the district court did not err in the approach it took. Specifically, Ceres asserts that the district court "should have engaged in the Eleventh Circuit's 'familiar three-step process': first, determine whether Ceres is entitled to attorney's fees; then, calculate the 'lodestar,' the 'number of hours reasonably expended in the legal work on the case multiplied by a reasonable hourly rate for the services'; finally, adjust the lodestar to account for the results obtained by Ceres," citing Atlanta Journal & Constitution v. City of Atlanta Dep't of Aviation, 442 F.3d 1283, 1289 (11th Cir. 2006). Yet, as the

Louisiana cases discussed above suggest, Louisiana does not typically use the "lodestar" test in setting attorneys' fees. Indeed, one court has noted that few Louisiana cases have used this test, which it described as "routinely utilized in discrimination cases in federal court." Brooks v. Southern University and Agr. and Mechanical College, 877 So. 2d 1194, 1228 (La. App. 4th Cir. 2004). What's more, Ceres has not even shown us that federal courts use this test in cases like this one, where attorneys' fees are awarded by contract, as opposed to by statute.

Rather, our review of Louisiana case law reveals that when attorneys' fees are awarded pursuant to a contract, a court need not perform any specific test, but simply determines the reasonableness of the fees based on the facts of the individual case. Fern Creek, 21 So. 3d at 383; Gottsegen v. Diagnostic Imaging Services, 672 So. 2d 940, 943 (La. App. 5th Cir. 1996). In performing this inquiry, "[t]he trial court has the ultimate discretion to determine the amount of attorney fees that may be recovered, based on the court's own knowledge, the evidence, and the court's observation of the case and the record." Fern Creek, 21 So. 3d at 383.

Here, it is clear from the district court's order that it determined the fee award after scouring the parties' briefs, as well as the detailed billing entries of Ceres's lead and local counsel and their paralegals. Because the record shows that the district court based the award on its own knowledge and the circumstances of the case, as permitted

6

by Louisiana case law, the district court did not err in failing to use the lodestar method in this case.

Nor are we persuaded by Ceres's challenge to the district court's decision to reduce the fee award based on community rates. In particular, the district court refused to use a $350/hour fee for Ceres's lead counsel, Karl Dix, Jr., and instead, based on rates in the relevant community of Mobile, Alabama, used a rate of $275/hour. As the district court noted, "[a] reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." Norman v. Housing Authority, 836 F.2d 1292, 1299 (11th Cir. 1988). "The general rule is that the 'relevant market' for purposes of determining the reasonable hourly rate for an attorney's services is the place where the case is filed." American Civil Liberties Union v. Barnes, 168 F.3d 423, 437 (11th Cir. 1999) (internal quotes omitted).[1] Because the case was filed in Mobile, the district court properly found that Mobile was the relevant market.

The applicant bears the burden of producing satisfactory evidence that the requested rate is aligned with prevailing market rates. See NAACP v. City of

---

[1] Although these cases arose in the statutory fees context, we cannot say that the district court abused its considerable discretion by looking to broad, and relevant, language from federal cases in making its fees determination.

7

Evergreen, 812 F.2d 1332, 1338 (11th Cir. 1987). Satisfactory evidence of the reasonableness of the rate necessarily includes an affidavit of the attorney performing the work and information of rates actually billed and paid in similar lawsuits. Norman, 836 F.2d at 1292. However, mere testimony that a given fee is reasonable is not satisfactory evidence of a market rate. See id. The court may award a non-local hourly rate if, and only if, the party demonstrates "a lack of attorneys practicing in that place who are willing and able to handle [its] claims." Barnes, 168 F.3d at 437. Moreover, "[a] prevailing plaintiff is not entitled to have the losing party pay for an attorney with the most expertise on a given issue, regardless of price, but only for one with reasonable expertise at the market rate." Id.

Here, Ceres does not argue that $275/hour is not the prevailing rate in Mobile. Instead, it claims that based on the complexity of this case, and Dix's experience with Ceres and his expertise in government contracts, $350/hour is reasonable, and asserts that government contract attorneys are generally located outside of Mobile. Yet, as the district court found, Ceres offered no evidence -- before the trial court, or in this one -- to "show a lack of attorneys practicing in [Mobile] who are willing and able to handle [its] claims." Id. As the district court further found, Ceres offered no information concerning the number of matters on which Dix had represented Ceres, or the scope of the work, and he did not claim to have any particularly useful

8

knowledge about Ceres. Nor did Dix claim 25 years of relevant experience, only 25 years as a lawyer, with no information about how much experience he actually has litigating over government contracts. In light of the well-supported reasons provided by the district court, and especially in light of the fact that it was Ceres's burden to show the reasonableness of its requested rate, the district court did not abuse its discretion in capping Dix's rate at $275/hour.

We also reject Ceres's claim that the district court abused its discretion in reducing fees based on "block billing" by Ceres's attorneys. "Block billing" occurs when an attorney lists all the day's tasks on a case in a single entry, without separately identifying the time spent on each task. In Barnes, we noted that block billing resulted in "imprecision" in an attorney's records and described it as a "problem" for which the opponent should not be "penalized," and approved the opponent's solution of dividing each day's hours by the number of tasks listed and assigning the quotient to each task. 168 F.3d at 429. Courts have also approved across-the-board reductions in block-billed hours to offset the effects of block billing. See, e.g., Kearney v. Auto-Owners Ins. Co., 713 F. Supp. 2d 1369, 1377-78 (M.D. Fla. 2010); Lil' Joe Wein Music, Inc. v. Jackson, 2008 WL 2688117 at *13 (S.D. Fla. 2008).

In this case, the district court recognized that there may be inefficiencies in requiring counsel to break down their daily activities more completely, and that Dix's

9

entries were often informative. Nevertheless, the district court found that Dix's entries routinely included half a dozen or more separate tasks, making it difficult for the court to gauge reasonableness, and were peppered with vague language such as "working with [John Doe]," and the even more unhelpful (and somewhat unsettling) entry, "continuing work on case." The district court ultimately concluded that a 10% reduction in Dix's 1,561 hours adequately addressed the block billing issue.

As the Supreme Court has said, "the fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates. The applicant . . . should maintain billing time records in a manner that will enable a reviewing court to identify distinct claims." Hensley v. Eckerhart, 461 U.S. 424, 437 (1983). Given the district court's wide discretion in setting the fee award, Ceres's burden in documenting its entitlement to the award, and the well-recognized problem of block billing, we cannot say the district court abused its discretion in addressing the problem in this case by applying a 10% reduction in counsel Dix's billable hours.

Finally, we disagree with Ceres's claim that the district court abused its discretion in limiting Ceres's recovery of investigative expenses. Specifically, the district court allowed Ceres to recover only 10% of the almost $363,000 it paid an investigator for 1,929 hours of work (plus $73,566.08 in expenses) "to locate and

10

interview various witnesses." As the district court found, however, the only witnesses Ceres discussed in its brief to the court were the McCrary driver, Joe Johnson, and the passenger in his vehicle. Moreover, while Ceres said Johnson was "difficult to locate" due to the efforts of plaintiffs' counsel in the Suit to keep him hidden, the district court found that Johnson was interviewed in person by the investigator on January 29, 2008, only twelve days after the investigator opened his file. Through that date, the investigator had billed only 65 hours and under $3,500 in expenses. Ceres also argued that the unnamed passenger required a "nationwide search" to locate, but the district court noted that Ceres failed to explain the efforts required and why they were reasonable. Ceres claimed other witnesses were scattered across the country, but the district court found that Ceres did not identify these witnesses, did not explain their significance to the case, and did not explain why it required such an effort to find them.

As we've repeatedly noted, Ceres, as the fee applicant, bore the burden of proving its entitlement to the fee award. We recognize that Ceres submitted to the district court voluminous billing records from its investigator that included, among other things, the names of the 69 witnesses he attempted to locate. Importantly, however, Ceres failed, as the district court found, to explain the significance of these 69 witnesses to the case, why they were so difficult to locate, and why it was

reasonable to expend such effort and money to locate them. Indeed, its in brief to this Court, Ceres again failed to explain these witnesses, and only claimed that they are explained by including a citation to the 62 pages of the investigator's billing records. While these records admittedly detail the investigator's efforts at locating these witnesses, they do not otherwise answer the district court's reasonable questions about how the investigator actually contributed to the Suit. Accordingly, we are compelled to conclude that the district court made no clear error in its findings, and did not abuse its discretion in capping the investigator's expenses at 10%.

**AFFIRMED.**