STATE OF MAINE
CUMBERLAND, ss.

SUPERIOR COURT
CIVIL ACTION
Docket No. RE-2021-057

APPLEGATE ASSOCIATION NO. 1,    )
)
       Plaintiff,    )
)   **ORDER ON DAMAGES, ATTORNEY**
v.    )   **FEES, AND COSTS**
)
MARJORIE COLLINS,    )
)
       Defendant.    )

This matter is before the Court following an evidentiary hearing on damages on March 13, 2023. The Court awards Plaintiff Applegate Association No. 1 ("the Association") damages, attorney fees, and costs as follows.

## I.    Background

Defendant Marjorie Collins owns a condominium unit within the Association. This case arose when she installed a gas line to service her unit without prior approval of the Board of Directors of the Association ("the Board"). By Order dated November 18, 2022, the Court entered summary judgment for the Association and against Mrs. Collins on all counts of the Association's Complaint and Mrs. Collins's Counterclaim, except as to the issue of damages on Counts III and IV of the Complaint. Count III is a claim for reimbursement of the cost of removing and reinstalling the gas line. Count IV is a claim for fines assessed by the Association against Mrs. Collins.

At the damages hearing, the Association presented the testimony of MaryEllen Joyce, Vice President of the Board, and Steve Caiazzo, a master plumber and licensed gas technician. Mrs. Collins introduced her own testimony and the testimony of Beau Atwater-Wood, a master plumber and gas line technician.

REC'D CUMB CLERKS OFC
APR 28 '23 AM11:32

The Association submitted Attorney John Turcotte's fee affidavit in support of its request for an award of attorney fees and costs. Mrs. Collins was given an opportunity, post-hearing, to respond in writing on the issue of attorney fees.

## II. Findings of Fact and Conclusions of Law

Based on the testimony and exhibits admitted at hearing, the Court makes the following findings of fact and conclusions of law.

### A. Cost of Removal and Reinstallation

Mr. Caiazzo testified that he estimated the cost of removing and reinstalling the gas line would be approximately $2,000.00. Mr. Atwater-Wood testified that he had previously provided an estimate of $750.00, but that the cost would have increased in the time since he provided the estimate. He estimated that the cost at the time of the hearing would be about $1,000.00. Mr. Atwater-Wood said that he would not be surprised, based on his experience, if another local plumber quoted $2,000.00 for the work. He also said that he would no longer perform work within the Association at his regular rate.

Based on the testimony of Mr. Atwater-Wood and Mr. Caiazzo, both experienced plumbers and gas technicians, the Court finds that Mr. Caiazzo's estimate of $2,000.00 for the removal and reinstallation of the gas line is reasonable. The Association is entitled to judgment in that amount on Count III of the Complaint.

### B. Fines

As declared in the Court's Order on the parties' cross motions for summary judgment, the Association has the authority to levy a reasonable fine for violations of the Association's Declaration, Bylaws, and Rules and Regulations. *See* 33 M.R.S. §1603-102(11). Section 5.3(d) of the Bylaws provides that $50.00 is the maximum daily fine the Board is authorized to levy for an ongoing violation.

On April 10, 2021, the Board sent a letter to Mrs. Collins notifying her of the violation and setting a thirty-day deadline to submit a plan to remedy the violation. When she failed to comply, the Board voted to impose a daily fine of $50.00 per day, commencing on July 13, 2021, until the violation was remedied. Ms. Joyce testified that the Board did not consider setting the daily fine at less than the maximum authorized. She testified that the Board imposed the fine to compel Mrs. Collins to comply.

Mrs. Collins argues that the Board was motivated by racial bias when it voted to impose the maximum daily fine and that the fine was, therefore, unreasonable. Mrs. Collins explained that she believed other decisions, such as the Board's vote to remove her as hospitality chair, were motivated by racial animus because she could not think of any other reason for the adverse decisions. Other than her own suspicions, the only evidence of racial bias that Mrs. Collins put forth was a comment made by one member of the Board shortly after Mrs. Collins moved into her home.[1] This comment was not connected in time to Mrs. Collins's application to install a gas line or the Board's vote to impose fines. There was, therefore, insufficient evidence that racial bias existed among Board members when the Board voted to assess a daily fine against Mrs. Collins.[2]

However, considering the relatively minor impact of Mrs. Collins's violation, selecting the maximum fine was not reasonable. There is no evidence in the record to support imposing the maximum fine. The Court finds that a daily fine of no more than $25.00 is reasonable under the circumstances. *See 48 Bramhall St. Condo. Ass'n v. Stone,* No. RE-13-150, 2014 Me. Super. LEXIS 120, at *18-19 (June 13, 2014) (noting that imposition of a $25.00 fine for violation of rules and regulations is common practice among

---

[1] The Board member commented that she thought property values would decline because an Asian person had moved into the neighborhood.
[2] As the Court ruled at hearing, evidence that Mrs. Collins sought to introduce regarding denial of a subsequent application to renovate the second floor of her unit more than a year later is irrelevant.

condominium associations, but expressing concern about the absence of a maximum total penalty in connection with a $25.00 per day fine).

Moreover, the Court will not award the fines that accrued during the pendency of this suit. A fine that stifles one's right to access the courts is not reasonable. *See Stonington Landing Condo. Ass'n v. Totolis*, No. CV075003218S, 2009 Conn. Super. LEXIS 3398, at *26 (Dec. 16, 2009). To avoid imposing a penalty for Mrs. Collins's exercise of her right to contest this suit, the Court will award a daily fine only for the twenty-seven days between July 13, 2021, and August 9, 2021, the date of the Association's Complaint. Accordingly, the Court finds that the Association may recover $675.00 for daily fines imposed on Mrs. Collins for violation of the Bylaws.

## C. Attorney Fees

The Association requests an award of reasonable attorney fees. In support, the Association submitted an affidavit of John Turcotte, with a letter of engagement and invoices attached.

The Association is entitled to reasonable attorney fees pursuant to Section 5.3(d) of the Bylaws. The following factors are relevant to determining a reasonable award of attorney fees:

> (1) the time and labor required; (2) the novelty and difficulty of the questions presented; (3) the skill required to perform the legal services; (4) the preclusion of other employment by the attorneys due to acceptance of the case; (5) the customary fee in the community; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by client or circumstances; (8) the degree of success; (9) the experience, reputation and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Homeward Residential, Inc. v. Gregor*, 2017 ME 128, ¶ 15, 165 A.3d 357 (quoting *Gould v. A-1 Auto, Inc.*, 2008 ME 65, ¶ 13, 945 A.2d 1225).

Counsel's hourly rate is $285.00, which the Court finds reasonable based on the

skill required, counsel's degree of success, and counsel's experience and reputation, among other factors. The Supplemental Fee Affidavit of Attorney Turcotte states that the invoices attached to the first fee affidavit total $27,903.00. The Court agrees with Defendant, however, that the total amount billed for services rendered, as reflected in the invoices, was $27,618.00.[3]

Mrs. Collins does not dispute that the Association is entitled to reasonable attorney fees. Nor does she contend that counsel's hourly rate is unreasonable or that the time billed for any specific task was unreasonable. Instead, Mrs. Collins takes issue with counsel's billing practices. She criticizes some entries as "block billing" and others as vague or imprecise. She asks the Court to make no award for any of the entries she challenges or, in the alternative, to discount the fees to account for possible inaccuracies.

"Block billing," also referred to as "lumping," is the practice of listing an entire day's tasks related to a case in one time-entry rather than itemizing specific tasks. *See Robinson v. City of Edmond*, 160 F.3d 1275, 1284 n.9 (10th Cir. 1998). Block billing justifies a reduction of the award when its appears that an attorney may be claiming compensation for tasks that would not otherwise be compensable or if it is difficult to gauge the reasonableness of the time billed for the described tasks. *See Ceres Env't Servs. v. Colonel McCrary Trucking, LLC*, 476 F. App'x 198, 203 (11th Cir. 2012) (reducing total award by ten percent because block billing made it "difficult for the court to gauge reasonableness"); *In re Leonard Jed Co.*, 103 B.R. 706, 713 (Bankr. D. Md. 1989) (describing reasons for disallowance of "lumping" entries by bankruptcy courts).

---

[3] The Court is unable to account for the discrepancy of $285.00 between the Association's calculation and the Court's (and Mrs. Collins's) calculation. Other items appear on the invoices, including some the costs that the Association seeks to recover (sheriff costs, filing fees, etc.), as well as other expenses that the Association has not expressly claimed. The invoices also reflect a $2,000.00 "courtesy discount." The expenses and discount, however, do not account for the discrepancy.

Most of the cases Mrs. Collins cites involve egregious block billing.[4] *See, e.g., Ceres Env't Servs.*, 476 F. App'x at 203 (reducing award by ten percent because of "vague" entries for "half a dozen or more separate tasks"); *Architectural Ingenieria Siglo v. Domican Republic*, No. 13-20544-CIV, 2020 U.S. Dist. LEXIS 178904, at *20 (S.D. Fla. Apr. 16, 2020) (reducing award by fifteen percent because of "[c]onsiderable" block billing in time records that were reconstructed years after the fact); *Est. of Shultz v. Potter*, No. 05-1169, 2010 U.S. Dist. LEXIS 19850, at * 13 (W.D. Penn. Mar. 5, 2010) (disallowing block billing of fifty-two hours for "amount of time spent on briefs, petitions..." on "various dates").

Of the entries Mrs. Collins identifies as block-billing, the largest entry is for 3.7 hours on February 3, 2023, for "Telephone conference with client; Work on Witness and Exhibit list; Prepare Motion in Limine; Correspondences with Attorney Kennedy regarding." Including that entry, the Court has found only four problematic entries: 2.10 hours on August 4, 2021, for "Finalize Complaints; Prepare Clerk's Certificate; Correspondences with client regarding status and the inherent lien available under the Maine Condominium Act"; 2.6 hours on July 21, 2022 for "Prepare for and attend discovery conference; Telephone conference with and correspondences to Attorney Kennedy; Prepare proposed Order; Correspondence to Clerk of Court; Follow up with client"; and 2.8 hours on February 21, 2023 for "Correspondences with client; Prepare for damages hearing; Prepare trial memorandum; Amend Exhibit List."

The number of distinct tasks listed in each of these time entries and the vagueness of some of the described tasks makes it difficult for the Court to determine whether all of

---

[4] Although the Association correctly notes that Mrs. Collins did not cite any case from Maine or the United States Court of Appeals for the First Circuit criticizing block billing or reducing an award because of block billing, the Court did find a few such cases. *See, e.g., Heien v. Archstone*, 837 F.3d 97, 102 (1st Cir. 2016) (upholding district judge's reduction of attorney fee award for block billing); *Torres-Rivera v. O'Neill-Cancel*, 524 F.3d 331, 340 (1st Cir. 2008) (holding that lower court's reduction of attorney fee award for block billing was not an abuse of discretion); *Callaghan v. City of South Portland*, No. CV-11-428, 2014 Me. Super. LEXIS 78, at *8 n.4 (Mar. 31, 2014) (describing block billing as a "problem").

the time billed was reasonably expended. To account for this, the Court will reduce the award for these entries by twenty-five percent, or $798.00.[5] These four entries do not, however, justify an across-the-board reduction. Although the other entries Mrs. Collins challenges for block billing may include time for two or three related tasks, they do not suffer from the same lack of clarity as the entries described above.

Mrs. Collins also identifies many other entries that she contends are too vague or imprecise. Entries need not be perfectly precise, however; the issue is whether a court is able to determine from the description whether the time was reasonably expended. *Marisol A. v. Giuliani*, 111 F. Supp. 2d 381, 397 (S.D.N.Y. 2000) ("If the time records lack such specificity that the court is unable to determine a proper fee allocation, then plaintiffs' fee recovery may be reduced."); *Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 172-173 (2d Cir. 1998) (upholding twenty percent reduction in attorney fees award for "vague" entries such as "letter to court," "staff conference," and "work on motion").

Most of the entries Mrs. Collins contends are too vague concern the parties' cross motions for summary judgment. Although the several entries that read "work on MSJ" or "continue work on MSJ" are not models of precision, the subject matter of the work is apparent. *See Hensley v. Eckerhart*, 461 U.S. 424, 437 n.12 (1983) ("Plaintiff's counsel, of course, is not required to record in great detail how each minute of his time was expended. But at least counsel should identify the general subject matter of his time expenditures."), *superseded in part by statute*, Prison Litigation Reform Act, Pub. L. No. 104-134, tit. VIII, 110 Stat. 1321 (1996) (codified at 41 U.S.C. § 1997e). As compared to the "work on motion" entry that the United States Court of Appeals for the Second Circuit found too vague, "work on MSJ" at least specifies the motion, which is helpful for

---

[5] By the Court's calculations, these four entries total 11.2 hours at a rate of $285.00, or $3,192.00. Twenty-five percent of $3,192.00 is $798.00.

determining whether the time was reasonably expended. The time billed for those entries, individually and cumulatively, is reasonable.

Other entries Mrs. Collins challenges are not at all vague. For example, she challenges an entry for 3.10 hours from September 27, 2022 for "Prepare Affidavits of Robert Hammer and John Turcotte in support of MSJ" and an entry for 0.7 hour from October 6, 2022, for "Begin work on Opposing Material Facts." The time billed for these entries is reasonable.

The Court has reviewed each remaining entry and did not find any to be unreasonable for the task or tasks described. The Association has demonstrated that it is entitled to an award of $26,820.00 for reasonable attorney fees. *Cf. Villas by the Sea Owners Ass'n v. Garrity*, No. CV-96-430, 2000 Me. Super. LEXIS 273, at *6 (Dec. 20, 2000) (awarding $15,031.90 for attorney fees to condominium unit owners who prevailed against condominium association in action regarding fines for alleged violation of bylaws).

**D. Costs**

The Association also seeks to recover $515.34 for sheriff costs, a witness fee, and filing fees. As the prevailing party, the Association is entitled to recover these costs. M.R. Civ. P. 54(d).

**III. Conclusion**

For the foregoing reasons, Plaintiff is entitled to judgment in its favor in the amounts of $2,000.00 and $675.00 on Counts III and IV of the Complaint, respectively. Plaintiff is also awarded $515.34 in costs and $26,820.00 in attorney fees.

The entry is:

1. On Count III of Plaintiff Applegate Association No. 1's Complaint, judgment is entered for Plaintiff and against Defendant Marjorie Collins in the amount of $2,000.00 plus interest;

2. On Count IV of Plaintiff's Complaint, judgment is entered for Plaintiff and against Defendant in the amount of $675.00 plus interest;

3. Plaintiff is awarded $515.34 in costs; and

4. Plaintiff is awarded $26,820.00 in attorney fees.

The Clerk is directed to incorporate this Order into the docket by reference pursuant to Maine Rule of Civil Procedure 79(a).

Dated: _April 28, 2023_

_MaryGay Kennedy, Justice_
Mary Gay Kennedy, Justice
Maine Superior Court

APPLEGATE ASSOCIATION NO. 1, )
                            )
      Plaintiff/Counterclaim    )
      Defendant,                 )
                            )

    v.                         )
                            )
MARJORIE COLLINS, )
                            )
      Defendant/Counterclaim  )
      Plaintiff.               )

**ORDER ON MOTIONS FOR
SUMMARY JUDGMENT**

REC'D CUMB CLERKS OFC
NOV 18 '22 PM2:04

This matter is before the Court on Plaintiff/Counterclaim Defendant Applegate Association No. 1's ("the Association") Motion for Partial Summary Judgment and Defendant/Counterclaim Plaintiff Marjorie Collins's ("Mrs. Collins") Motion for Summary Judgment. For the following reasons, the Court grants the Association's Motion and denies Mrs. Collins's Motion.

## I.    Background

The following is drawn from the parties' statements of material facts. The Association owns certain real property in Falmouth, Maine. (Pl.'s Supp'g S.M.F. ¶ 3; Pl.'s Add'l S.M.F. ¶ 3.) Mrs. Collins owns Unit 31 in Building Cluster No. 11 within the Association by way of deed recorded in the Cumberland County Registry of Deeds at Book 36210, Page 92. (Pl.'s Supp'g S.M.F. ¶ 5; Def.'s Supp'g S.M.F. ¶ 1; Pl.'s Add'l S.M.F. ¶ 5.)

All units within the condominium, including Mrs. Collins's, are subject to the Declaration, as amended and restated, recorded in the Cumberland County Registry of Deeds at Book 36945, Page 40, as well as the Plats, Bylaws, and all properly promulgated

Rules and Regulations (the Declaration, Plats, Bylaws, and Rules and Regulations collectively, the "Governing Documents"). (Pl.'s Supp'g S.M.F. ¶ 4; Def.'s Supp'g S.M.F. ¶ 2; Pl.'s Add'l S.M.F. ¶ 4.) Declaration § 5.2 provides that the Board of Directors ("the Board") shall govern the affairs of the Association. (Pl.'s Supp'g S.M.F. ¶ 20; Pl.'s Add'l S.M.F. ¶ 14.)

In September 2020, Mrs. Collins notified the Board that she was planning to install gas heat to her unit.[1] (Pl.'s Supp'g S.M.F. ¶ 26; Pl.'s Add'l S.M.F. ¶ 20.) The Board provided Mrs. Collins with forms for an application for approval of the project. (Pl.'s Supp'g S.M.F. ¶ 30; Pl.'s Add'l S.M.F. ¶ 24.) Mrs. Collins submitted a partial application. (Pl.'s Supp'g S.M.F. ¶ 31; Pl.'s Add'l S.M.F. ¶ 25.)

In early January 2021, Mrs. Collins retained the services of Beau J. Atwater-Wood of Redwood Plumbing and Heating to install a gas line to her unit. (Pl.'s Supp'g S.M.F. ¶ 35; Def.'s Supp'g S.M.F. ¶ 4; Def.'s Add'l S.M.F. ¶ 1; Pl.'s Add'l S.M.F. ¶ 29.) Although Mr. Atwater-Wood had initially proposed running the gas line through the garage, Mrs. Collins and Mr. Atwater-Wood arrived at a different configuration for the gas line after discussing Mrs. Collins's plans for modifications to the interior of her unit, practical considerations, and safety considerations. (Pl.'s Supp'g S.M.F. ¶¶ 40-41; Def.'s Resp. Pl.'s Supp'g S.M.F. ¶¶ 40-41; Def.'s Supp'g S.M.F. ¶¶ 9-12; Def.'s Add'l S.M.F. ¶¶ 6-9; Pl.'s Add'l S.M.F. ¶¶ 34-36.) The configuration involved running a gas line six feet up the exterior face of the building, approximately ten feet across the face of the building and over the door, then approximately eight feet down the building's face parallel to the door before entering the unit. (Pl.'s Supp'g S.M.F. ¶ 42; Def.'s Resp. Pl.'s Supp'g S.M.F. ¶ 42.)

---

[1] Mrs. Collins denies several admissible statements of material fact without providing a record citation. Each of those statements is deemed admitted by Mrs. Collins. *See* M.R. Civ. P. 56(h)(2), (4).

Sometime around the first week of January 2021, Mrs. Collins installed her gas line. (Pl.'s Supp'g S.M.F. ¶ 36; Pl.'s Add'l S.M.F. ¶ 30.) Mr. Atwater-Wood affixed the gas line to the exterior face of the building with clamps screwed into the exterior with twelve drywall screws and secured by split rings and F&M plates.[2] (Pl.'s Supp'g S.M.F. ¶¶ 43, 44; Pl.'s Add'l S.M.F. ¶ 38.) Mr. Atwater-Wood testified that to affix the gas piping, he screwed through the siding into the plywood beneath and into the drywall beyond the plywood. (Pl.'s Supp'g S.M.F. ¶ 45; Pl.'s Add'l S.M.F. ¶ 39.) Mr. Atwater-Wood also drilled a hole at the end of the exterior gas piping through the exterior siding, plywood, and drywall. (Pl.'s Supp'g S.M.F. ¶ 48; Pl.'s Add'l S.M.F. ¶ 42.)

The gas line, which services only Mrs. Collins's unit, was installed to service a gas range and gas fireplace within Mrs. Collins's unit. (Pl.'s Supp'g S.M.F. ¶ 37; Pl.'s Add'l S.M.F. ¶ 31; Def.'s Supp'g S.M.F. ¶ 6; Def.'s Add'l S.M.F. ¶ 3.) The gas line was safely installed. (Def.'s Supp'g S.M.F. ¶ 8; Def.'s Add'l S.M.F. ¶ 5.)

Mrs. Collins did not submit a complete application to the Board before commencing the work, nor did she provide notice to the Board as to the timing of the work to be performed. (Pl.'s Supp'g S.M.F. ¶¶ 51, 52; Def.'s Resp. Pl's Supp'g S.M.F. ¶ 52; Pl.'s Add'l S.M.F. ¶¶ 45, 46.) Mrs. Collins stated that she "assumed that [the] maintenance request was approved by the Board." (Pl.'s Supp'g S.M.F. ¶ 55; Pl.'s Add'l S.M.F. ¶ 49.)

Section 3.4 of the Declaration provides:

> Subject to the provisions of this Declaration, the Bylaws, and the Rules and Regulations of the Association, a Unit Owner may make nonstructural improvements and alterations within the interior of the Unit without approval of the Association.

---

[2] Paragraphs 11-14, 46, 47, 49, and 50 of the Association's Supporting Statement of Material Facts and paragraphs 9, 11, 12, and 22 of the Association's Additional Statement of Material Facts constitute legal conclusions and will not be considered. The portion of paragraph 53 of the Association's Supporting Statement of Material Facts that contains a legal conclusion will not be considered. Similarly, paragraphs 7 and 14 of Mrs. Collins's Supporting Statement of Material Facts and paragraphs 4 and 11 of Mrs. Collins's Additional Statement of Material Facts will not be considered because they contain legal conclusions.

. . . .

Any alteration or improvement which is structural or which does not conform with the provisions in the previous sentence may be made only with the written approval of the Board of Directors. Applications for such alterations or improvements shall be made in accordance with the procedures set forth in § 4.3 herein. Alterations or improvements outside the boundaries of the Unit, as defined in § 3.2, also shall require written approval of the Board of Directors after application made in accordance with § 4.3.

(Pl.'s Supp'g S.M.F. ¶ 6; Def.'s Supp'g S.M.F. ¶ 18; Def.'s Add'l S.M.F. ¶ 16; Pl.'s Add'l S.M.F. ¶ 8.) Similarly, Declaration § 4.3 provides in part:

No Unit Owner shall alter any portion of the Common Elements, including the Limited Common Elements, without the express written permission of the Board of Directors. Prohibited alterations without Board consent include exterior paint, exterior doors, replacement windows, addition of a second story, alteration of a garage or basement, and all other alterations or additions to the portions of the Property considered Common or Limited Common Elements.

(Pl.'s Supp'g S.M.F. ¶ 15; Def.'s Supp'g S.M.F. ¶ 19; Def.'s Add'l S.M.F. ¶ 17.)

Declaration § 4.1 defines the "Common Elements" as "all of the Property, excluding the Units." (Pl.'s Supp'g S.M.F. ¶ 9; Def.'s Supp'g S.M.F. ¶ 20; Def.'s Add'l S.M.F. ¶ 18; Pl.'s Add'l S.M.F. ¶ 6.) Declaration § 1.1 defines "the Property" as the "metes and bounds description of the real property and buildings and improvements provided as Exhibit A to the Declaration." (Pl.'s Supp'g S.M.F. ¶ 10; Pl.'s Add'l S.M.F. ¶ 7.) Section 3.2 of the Declaration defines the boundaries of a Unit:

(a) The upper horizontal boundary is the unfinished/undecorated lower interior side of the wallboard, gypsum, or other surface attached to the lower edge of the second floor or attic joists.

(b) The lower horizontal boundary is the unfinished/undecorated interior side of the subflooring or material attached to the top edge of the floor joists or any concrete floor slab.

(c) The vertical boundaries are the unfinished/undecorated interior side of the wallboard, gypsum, or other surface attached to the inner edge of the exterior wall studs, interior surfaces of exterior doors, windows, skylights, and glass walls, and the unfinished/undecorated surface of party walls between abutting Units.

. . . .

> By way of example and not of limitation, specific components of Units include interior partitions, finished flooring or floor covering . . . and gas lines servicing Unit equipment and systems, even if any portions of such lines or systems are located outside of the Unit boundaries, provided that they do not service another Unit.

> Any portion of the utility system or other apparatus serving more than one Unit (e.g., pipes, conduits, ducts) which is partially within and partially without the Unit, is part of the Common Elements.

(Pl.'s Supp'g S.M.F. ¶¶ 7, 8; Def.'s Supp'g S.M.F. ¶ 17; Def.'s Add'l S.M.F. ¶ 15.)

Declaration § 5.3 authorizes the adoption of Rules and Regulations pertaining "to the operation, use, appearance, and occupancy of the Units and Common Elements." (Pl.'s Supp'g S.M.F. ¶ 21; Pl.'s Add'l S.M.F. ¶ 15.) The most current version of the Rules and Regulations was adopted in June 2020. (Pl.'s Supp'g S.M.F. ¶ 22.; Pl.'s Add'l S.M.F. ¶ 16.) Rule and Regulation III provides:

> Owners are permitted to make alterations to the interior of their personal unit without having to seek the permission of the Board of Directors provided those alterations have no effect on the structure and are confined to the interior space. If the alterations affect the structure or the exterior appearance in any way, then a Request for Alteration/Maintenance must be submitted to the Alterations and Maintenance Committee with plans and contractor information for evaluation and recommendation for approval/denial by the Board of Directors.

(Pl.'s Supp'g S.M.F. ¶ 23; Pl.'s Add'l S.M.F. ¶ 17.)

> Section 5.3(d) of the Bylaws provides:

> The violation of any rule or regulation adopted by the Association, or the breach of any Bylaw, or the breach of any provision of the Declaration shall give the Directors the right, in addition to any other rights set forth in these Bylaws:

> (1) After reasonable written notice and opportunity for the Owner to remedy the violation, to enter the Unit in which, or as to which, such violation or breach exists and to summarily abate and remove, at the expense of the defaulting member, any structure, thing or condition that may exist therein contrary to the intent and meaning of the provisions hereof, and the Board of Directors shall not thereby be deemed guilty in any

manner of trespass provided, however, the Board of Directors shall not alter or demolish any items of construction before instituting appropriate judicial proceedings;

(2) To enjoin, abate or remedy by appropriate legal proceedings, either at law or in equity, the continuance of any such breach at the cost, including reasonable attorneys' fees, of such member;

(3) If the personal conduct of any person violates the Association Rules and Regulations governing the use of the Common Elements, to suspend such use by any such person for violation of such rule or regulation for a period not to exceed thirty (30) days, in addition to the period of violation, for any single violation.

(4) If, after thirty (30) days written notice, a person continues to continuously or repeatedly, and flagrantly, violate a rule or regulation, summary charges may be levied against a member for such violation, in addition to any damages, provided that no summary charges may be levied for more than $50.00 for any one violation; but each day a violation continues after such notice shall be considered a separate violation. Collection of charges for damages or summary charges may be enforced against the member as if the charge were a common charge owed by a particular member or members.

(Pl.'s Add'l S.M.F. ¶ 70.)

The Board obtained an estimate of $803.31 to rework the gas line. (Pl.'s Supp'g S.M.F. ¶ 67; Pl.'s Add'l S.M.F. ¶ 61.) Mrs. Collins refused to work with the Board to alter the gas line. (Pl.'s Supp'g S.M.F. ¶¶ 69, 70; Pl.'s Add'l S.M.F. ¶¶63, 64.)

Pursuant to § 5.3(d)(4) of the Bylaws, the Board sent a written Notice of Violation to Mrs. Collins on April 10, 2021. (Pl.'s Add'l S.M.F. ¶ 71.) Mrs. Collins did not remedy the purported violation within thirty days of receipt of the Notice of Violation. (Pl.'s Add'l S.M.F. ¶ 73.) The Board voted to set a daily fine of $50.00. (Pl.'s Add'l S.M.F. ¶ 72.) The Association has assessed and continues to assess Mrs. Collins a fine of $50.00 per day for each day that her gas line remains in place. (Def.'s Supp'g S.M.F. ¶ 16; Def.'s Add'l S.M.F. ¶ 13.)

Mrs. Collins moves for summary judgment on Counts I through IV of the Association's Complaint and Count I of her Counterclaim. The Association moves for

summary judgment on Counts I and II of its Complaint and Counts I and II of Mrs. Collins's Counterclaim.

## II.    Legal Standard

A party is entitled to summary judgment when review of the parties' statements of material facts and the record to which the statements refer demonstrates that there is no genuine issue as to any material fact in dispute, and that the moving party is entitled to judgment as a matter of law. M.R. Civ. P. 56(c); *Dyer v. Dep't of Transp.*, 2008 ME 106, ¶ 14, 951 A.2d 821.

A contested fact is "material" if it could affect the outcome of the case. *Dyer*, 2008 ME 106, ¶ 14, 951 A.2d 821. A "genuine issue" of material fact exists if a factfinder must "choose between competing versions of the truth." *Id.* (quoting *Farrington's Owners' Ass'n v. Conway Lake Resorts, Inc.*, 2005 ME 93, ¶ 9, 878 A.2d 504).

The court considers the record in the light most favorable to the party objecting to the grant of summary judgment. *F.R. Carroll, Inc. v. TD Bank, N.A.*, 2010 ME 115, ¶ 8, 8 A.3d 646; *Blue Star Corp. v. CKF Props., LLC*, 2009 ME 101, ¶ 23, 980 A.2d 1270. "Facts contained in a supporting or opposing statement of material facts, if supported by record citations as required by this rule, shall be deemed admitted unless properly controverted." M.R. Civ. P. 56(h)(4). To controvert an opposing party's statement of fact, a party must "support each denial or qualification by a record citation." M.R. Civ. P. 56(h)(2). The evidence offered in support of a genuine issue of material fact "need not be persuasive at that stage, but the evidence must be sufficient to allow a fact-finder to make a factual determination without speculating." *Est. of Smith v. Cumberland County*, 2013 ME 13, ¶ 19, 60 A.3d 759.

When appropriate, summary judgment may be rendered against the moving party. M.R. Civ. P. 56(c). Summary judgment may be entered on the issue of liability alone although there is a genuine issue as to the amount of damages. *Id.*

## III. Discussion

The undisputed facts for each of the pending motions are substantially similar, but not identical. The Court will first consider Mrs. Collins's motion, viewing the record developed in connection with that motion in the light most favorable to the Association. Then, the Court will consider the Association's motion, viewing the record developed in connection with that motion in the light most favorable to Mrs. Collins.

### A. Mrs. Collins's Motion for Summary Judgment

#### i. Counterclaim Count I

Count I of Mrs. Collins's Counterclaim requests a declaratory judgment that Mrs. Collins has the right to install gas lines without Board approval. Mrs. Collins contends that the Governing Documents allow Unit owners to modify the interior of Units without Board approval, and that gas lines are included in the definition of "Unit." To resolve this issue, the Court must interpret the Governing Documents.

"A condominium association's bylaws and declaration are contracts, and '[t]he interpretation of a contract, including whether or not its terms are ambiguous, is a question of law.'" *Scott v. Fall Line Condo. Ass'n*, 2019 ME 50, ¶ 6, 206 A.3d 307 (quoting *Farrington's Owners' Ass'n*, 2005 ME 93, ¶ 9, 878 A.2d 504). Language is ambiguous "if it is reasonably susceptible to different interpretations." *Farrington's Owners' Ass'n*, 2005 ME 93, ¶ 9, 878 A.2d 504.

If the court determines that language in the contract is ambiguous, then the interpretation of that language becomes a question of fact for the factfinder. *Scott*, 2019 ME 50, ¶ 6, 206 A.3d 307. Declarations and bylaws must be "construed in accordance with

the intention of the parties, which is to be ascertained from an examination of the whole instrument. All parts and clauses must be considered together that it may be seen if and how one clause is explained, modified, limited or controlled by the others." *Scott*, 2019 ME 50, ¶ 7, 206 A.3d 307 (quoting *Am. Prot. Ins. Co. v. Acadia Ins. Co.*, 2003 ME 6, ¶ 11, 814 A.2d 989).

The Declaration is unambiguous. The Common Elements may not be modified without prior written approval of the Board. The Common Elements include the exterior siding and exterior walls because they fall outside of the definition of a "Unit." Moreover, Rule and Regulation III makes abundantly clear that any alteration that "affects the structure or the exterior appearance in any way" requires approval.

Mrs. Collins's interpretation—that gas lines are a component of a Unit and may be installed outside of a Unit and attached to Common Elements without prior approval of the Board as long as the gas line services only one Unit—is not a reasonable reading. Mrs. Collins's interpretation depends on reading § 3.2 in isolation. But the Court must consider the meaning of § 3.2 within the context of the Declaration as a whole, which includes §§ 3.4, 4.1, and 4.3, and the incorporated Rules and Regulations. Reading the Governing Documents as a whole, it is apparent that Mrs. Collins's interpretation is unreasonable. Summary judgment will be entered against Mrs. Collins and in favor of the Association on Count I of the Counterclaim.

### ii.    Complaint Count I

The Association seeks a judgment declaring that Mrs. Collins violated the Governing Documents by installing her gas line and that the gas line is an unauthorized alteration to the Association's Common Elements. As discussed above, the Governing Documents unambiguously prohibit alteration of the Common Elements without prior

Board approval, which Mrs. Collins did not obtain. Because installation of the gas line altered the exterior siding and walls, Mrs. Collins violated the Governing Documents.

There are genuine disputes of fact regarding the aesthetic compatibility of Mrs. Collins's gas lines with gas lines servicing other units. These disputes, however, are not material because they do not affect the undisputed fact that Mrs. Collins did not receive approval for the gas line installation. Accordingly, the Association is entitled to summary judgment in its favor and against Mrs. Collins on Count I of its Complaint.

### iii.    Complaint Count II

The Association seeks an order enjoining Mrs. Collins from interfering with work by the Association to remove and reinstall the gas line. A court may award injunctive relief when a plaintiff has shown:

> (1) that plaintiff will suffer irreparable injury if the injunction is not granted, (2) that such injury outweighs any harm which granting the injunctive relief would inflict on the defendant, (3) that plaintiff has exhibited a likelihood of success on the merits (at most, a probability; at least, a substantial possibility), (4) that the public interest will not be adversely affected by granting the injunction.

*Ingraham v. Univ. of Me.*, 441 A.2d 691, 693 (Me. 1982). When a plaintiff requests a permanent injunction, the third element requires that the plaintiff has succeeded on the merits. *Fitzpatrick v. Town of Falmouth*, 2005 ME 97, ¶ 18, 879 A.2d 21.

There are no genuine disputes of material fact as to any of the elements. As discussed in detail in the following section, the Association has succeeded in demonstrating the existence of the violation and its right to remedy the violation pursuant to the Governing Documents. *See* Bylaws § 5.3(d)(1). The Association has demonstrated the harm to its property rights from the continuing violation of the Governing Documents. That harm outweighs any harm that would come to Mrs. Collins from the reconfiguration and reinstallation of the gas line, which is minimal. Finally, it is

apparent that the public interest will not be adversely affected by the reinstallation project or by preventing Mrs. Collins from interfering with the work.

The Association, therefore, is entitled to injunctive relief. Summary judgment will be entered against Mrs. Collins and in favor of the Association on Count II of the Complaint. An order will enter to enjoin Mrs. Collins from interfering with the Association's removal and reinstallation of the gas line servicing her Unit directly or through her agent(s).

### iv. Complaint Counts III and IV

Count III of the Complaint is a claim for reimbursement of the cost of removing and reinstalling the gas lines. Count IV is a claim for the fines assessed by the Association against Mrs. Collins. Section 5.3(d)(1) of the Bylaws provides that the Association may abate and remove any "structure, thing or condition" that exists in violation of the Governing Documents at the expense of the unit owner after reasonable written notice and opportunity for the unit owner to remedy the violation. Section 5.3(d)(4) of the Bylaws provides that the Board may fine a person fifty dollars per day after notice of a violation "[i]f, after thirty (30) days written notice, a person continues to continuously or repeatedly, and flagrantly, violate a rule or regulation."

Installation of the gas line required affixing brackets to the exterior siding and drilling a hole through the exterior siding and wall, which are Common Elements, thereby altering the exterior appearance of the building. Mrs. Collins violated the Declaration and Rule and Regulation III by failing to obtain approval of the Board before proceeding with the project.

A written Notice of Violation was sent to Mrs. Collins on April 10, 2021. The Board also offered Mrs. Collins an opportunity to remedy the violation by reworking the gas line, which she refused. The violation continued for more than thirty days. These facts

are undisputed. The Board, therefore, has authority to fine Mrs. Collins for the violation pursuant to Bylaws § 5.3(d)(4). The Board also has authority to remove the gas line at Mrs. Collins's expense. Summary judgment will be entered in favor of the Association and against Mrs. Collins on the issue of liability for Counts III and IV; however, a hearing on damages will be necessary.

## B. The Association's Motion for Partial Summary Judgment

### i. Complaint Count I

As decided above, the Association is entitled to entry of summary judgment in its favor and against Mrs. Collins on Count I of its Complaint.

### ii. Complaint Count II

As decided above, the Association is entitled to entry of summary judgment in its favor and against Mrs. Collins on Count II of its Complaint.

### iii. Counterclaim Counts I and II

The Court has already ruled in favor of the Association and against Mrs. Collins on Count I of the Counterclaim. Thus, in the context of the Association's Motion, the Court need only discuss Counterclaim Count II. Count II of Mrs. Collins's Counterclaim requests an injunction prohibiting the Association from fining Mrs. Collins for the installation of the gas line.

As discussed above, the Association has authority pursuant to Bylaws § 5.3(d)(4) to fine Mrs. Collins for each day the gas line remains in place in violation of the Governing Documents. The Court will not issue the requested injunction. Summary judgment is entered in favor of the Association and against Mrs. Collins on Count II of her Counterclaim.

## IV. Conclusion

For the foregoing reasons, the Courts denies Mrs. Collins's Motion for Summary Judgment and grants the Association's Motion for Partial Summary Judgment.

The entry is:

1. Defendant/Counterclaim Plaintiff Marjorie Collins's Motion for Summary Judgment is DENIED. Summary judgment is entered against Mrs. Collins and in favor of Plaintiff/Counterclaim Defendant Applegate Association No. 1 on Count I of Mrs. Collins's Counterclaim, and summary judgment is entered against Mrs. Collins and in favor of the Association on Counts I and II of the Association's Complaint. Summary judgment as to the issue of liability is entered against Mrs. Collins and in favor of the Association on Counts III and IV of the Complaint; however, hearing on the issue of damages as to Counts III and IV is necessary before the Court may make an award of damages.

2. The Association's Motion for Partial Summary Judgment is GRANTED. Summary judgment is entered in favor of the Association and against Mrs. Collins on Counts I and II of its Complaint, and summary judgment is entered in favor of the Association and against Mrs. Collins on Counts I and II of the Counterclaim.

3. Mrs. Collins is hereby ENJOINED from interfering with the Association's removal and reinstallation of the gas line servicing her Unit directly or through her agent(s).

The Clerk is directed to incorporate this Order into the docket by reference pursuant to Maine Rule of Civil Procedure 79(a).

Dated: _November 18, 2022_

_____
MaryGay Kennedy, Justice
Maine Superior Court